# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 3837 | DATE | JANUARY 22, 2004 |
| CASE TITLE | SUNNI BARKER v. TRANS UNION LLC and MBNA | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Defendant MBNA's motion to stay proceedings pending arbitration or, in the alternative, to dismiss the complaint [16-1,2] is denied without prejudice. Within two weeks, defendant MBNA shall answer the complaint

(11) ■ [For further detail see attached Memorandum Opinion and Order.]

| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | 1-23-04 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | Jan. 22, 2004 date mailed notice | |
| cw courtroom deputy's initials | | Date/time received in central Clerk's Office | mqm mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SUNNI BARKER,
        Plaintiff,

v.                              No. 03 C 3837

TRANS UNION LLC and
MBNA,
        Defendants.

JAN 2 3 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Sunni Barker brings this lawsuit against defendants Trans Union LLC and MBNA, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. According to the allegations of the complaint, plaintiff's now ex-husband had an MBNA credit card account in his own name. Without her knowledge or agreement, plaintiff was thereafter added to the account and denominated an authorized user. After learning in 2003 that negative credit information regarding plaintiff was being reported regarding this account, plaintiff informed credit reporting agency Trans Union that she disputed the report. Trans Union allegedly failed to properly investigate and respond to plaintiff's dispute and continued to report the negative credit information. MBNA allegedly failed to properly investigate and respond following Trans Union informing MBNA that

plaintiff disputed the negative credit information. Count I of the complaint is an FCRA claim against Trans Union, Count II is a common law defamation claim against Trans Union, and Count III is an FCRA claim against MBNA.

MBNA has moved to stay the claim against it based on an arbitration provision that purportedly was part of the agreement for the credit card account. Alternatively, MBNA moves to dismiss Count III on the ground that it fails to adequately state a basis for relief. MBNA contends that, in June 1999, it telephonically confirmed plaintiff's addition to the account when she was first added to the account and thereafter mailed written confirmation, a credit card, and the account agreement. It also contends that, in December 1999, it mailed to plaintiff an amendment to the account agreement that added an arbitration provision that was to become effective in February 2000 unless, by January 25, 2000, MBNA received a letter rejecting the arbitration provision. Neither plaintiff nor her ex-husband sent such a rejection letter. Plaintiff denies that she participated in adding her name to the account, denies that she received the documents or card purportedly mailed to her, and denies ever using the credit card for the account.

The parties dispute whether plaintiff herself telephonically requested to be added to the account as well as whether she actually received any of the documents MBNA contends were sent to her. The motion before the court is not one on which these disputes may be resolved. The only questions that

can presently be resolved are: (1) Taking plaintiff's factual contentions to be true, is plaintiff still required to go to arbitration? (2) Taking MBNA's factual contentions as true, is the arbitration agreement unenforceable as a matter of law?

MBNA provides a copy of a January 1997 version of its account agreement (the "Agreement"), which apparently would have been the version being mailed out in June 1999. The Agreement has a provision that it is governed by Delaware law and that the Agreement may be amended by complying with applicable notification requirements of Delaware and federal law.

The arbitration provision purportedly added to the Agreement effective February 1, 2000 (the "Arbitration Section") provides in part:

> **Arbitration:** Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), including Claims regarding the applicability of this Arbitration Section or the validity of the entire Agreement or any prior Agreement, shall be resolved by binding arbitration. The arbitration shall be conducted by the National Arbitration Forum ("NAF"), . . . . At your written request, we will advance any arbitration filing fee, administrative and hearing fees which you are required to pay to pursue a Claim in arbitration. The arbitrator will decide who will be ultimately responsible for paying those fees. In no event will you be required to reimburse us for any arbitration filing, administrative or hearing fees in an amount greater than what your court costs would have been if the claim had been resolved in a state court with jurisdiction. Any arbitration hearing at which you appear will take

> place within the federal judicial district that
> includes your billing address at the time the
> Claim is filed. This arbitration agreement is
> made pursuant to a transaction involving
> interstate commerce, and shall be governed by the
> Federal Arbitration Act, 9 U.S.C. §§ 1-16
> ("FAA"). . . .
>
> * * *
>
> . . . for the purposes of this Arbitration
> Section, "you" or "yours" shall mean any person
> or entity approved by us to use the account,
> including but not limited to all persons or
> entities contractually obligated on the Account
> and all authorized users of the account.
>
> * * *
>
> THE RESULT OF THIS ARBITRATION SECTION IS THAT,
> EXCEPT AS PROVIDED ABOVE, CLAIMS CANNOT BE
> LITIGATED IN COURT, INCLUDING SOME CLAIMS THAT
> COULD HAVE BEEN TRIED BEFORE A JURY, AS CLASS
> ACTIONS OR AS PRIVATE ATTORNEY GENERAL ACTIONS.
>
> *If you do not wish your account to be subject to
> the Arbitration Section, you must write to us
> at . . . . You must give notice in writing; it
> is not sufficient to telephone us. Send this
> notice only to the address in this paragraph; do
> not send it with a payment.* **We must receive you
> letter at the above address by January 25, 2000
> or your rejection of the Arbitration Section will
> not be effective.**

The only arbitration-related motion appropriately before this court is a motion to stay the claim against MBNA pending arbitration, that is a motion pursuant to 9 U.S.C. § 3. Although MBNA entitles its motion as one to stay proceedings pending arbitration, it concludes by also requesting that plaintiff be compelled to arbitrate her claim against MBNA, which would be a motion pursuant to 9 U.S.C. § 4. Likewise, plaintiff cites to § 4, including its provision of a right to a jury trial. However, a § 4 motion to compel arbitration may only be brought in the district in which the arbitration is to be held. <u>Merrill</u>

Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323, 327-28 (7th Cir. 1995); Continental Casualty Co. v. Hartford Steam Boiler Inspection & Insurance Co., 270 F. Supp. 2d 1015, 1016-17 (N.D. Ill. 2003); UAL Corp. v. Mesa Airlines, Inc., 88 F. Supp. 2d 910, 912-13 (N.D. Ill. 2000). This is based on language in § 4 providing: "The hearing and proceedings, under such [arbitration] agreement, shall be within the district in which the petition for an order directing such arbitration is filed." MBNA's request to compel arbitration does not expressly state a location for the arbitration. However, in arguing that the Arbitration Section is not unconscionable or cost-prohibitive, MBNA points to the Arbitration Section's provision that the arbitration is to be held in the district where the cardholder's billing address is located. MBNA contends the place of arbitration would be California where plaintiff now resides. This court cannot compel arbitration in California. Only the § 3 motion to stay is appropriately before the court.

A § 3 motion is solely for the court to decide. Unlike a § 4 motion to compel arbitration, on a § 3 motion to stay court proceedings there is no right to a jury trial to resolve any disputed factual issues. Matterhorn, Inc. v. NCR Corp., 763 F.2d 866, 873-74 (7th Cir. 1985); J & R Sportswear & Co. v. Bobbie Brooks, Inc., 611 F.2d 29, 30 (3d Cir. 1979); Oasis Oil & Refining Corp. v. Armada Transport & Refining Co., 719 F.2d 124, 126 (5th Cir. 1983); Quinlan v. Painewebber Inc., 1989 WL 48117 *1-2 (E.D. Pa. May 8, 1989); Marshall v. Green Giant Co., 1985 WL

2458 *2 (D. Minn. Aug. 7, 1985). See also Marshall v. Green Giant Co., 942 F.2d 539, 547-48 (8th Cir. 1991).

That a claim is subject to arbitration is an affirmative defense. Wilson Wear, Inc. v. United Merchants & Manufacturers, Inc., 713 F.2d 324, 326 (7th Cir. 1983); Pierce v. Shearson Lehman Hutton, Inc., 1990 WL 60751 *1-2 (N.D. Ill. April 26, 1990); In re Crysen/Montenay Energy Co., 226 F.3d 160, 162 (2d Cir. 2000), cert. denied, 532 U.S. 920 (2001). As with any affirmative defense, plaintiff was not required to plead facts in the Complaint that would negate the defense. Alvarado v. Litscher, 267 F.3d 648, 651-52 (7th Cir. 2001); Tregenza v. Great American Communications Co., 12 F.3d 717, 718 (7th Cir. 1993), cert. denied, 511 U.S. 1085 (1994). Although an affirmative defense, a request to stay arbitration may be raised in a motion filed prior to answering the complaint. Wilson Wear, supra; Pierce, supra; Crysen/Montenay, supra. If a motion to stay arbitration and the response thereto indicate there are no material factual disputes, the issue of arbitration may be resolved on the motions. See Commerce Park at DFW Freeport v. Mardian Construction Co., 729 F.2d 334, 340-41 (5th Cir. 1984); Brook Mays Music Co. v. National Cash Register Co., 838 F.2d 1396, 1399 (5th Cir. 1988); Great Western Mortgage Corp. v. Peacock, 110 F.3d 222, 231 n.36 (3d Cir.), cert. denied, 522 U.S. 915 (1997); Bank One Arizona, NA v. Wilton Hurst G.P. Corp., 2001 WL 276891 *1 (N.D. Tex. March 19, 2001). As to § 4 motions, there is case law supporting that the party opposing arbitration

must provide some evidence, not merely allegations, showing that a factual dispute exists. See Green Tree Financial Corp.- Alabama v. Randolph, 531 U.S. 79, 92 (2000); Livingston v. Associates Finance, Inc., 339 F.3d 553, 557 (7th Cir. 2003); Kreimer v. Delta Faucet Co., 2000 WL 962817 *6-7 (S.D. Ind. June 2, 2000). Summary judgment type procedures may be employed. See China Resource Products (U.S.A.) Ltd. v. Fayda International, Inc., 747 F. Supp. 1101, 1105 (D. Del. 1990). See also Kreimer, 2000 WL 962817 at *7. Here, MBNA did not file any Local Rule 56.1 type statement of facts and there is no clear rule that plaintiff has to provide evidence at this point in the proceeding. Instead, at this point in the proceeding, it is appropriate to simply consider the parties' factual contentions as stated in their briefs.[1] To the extent the factual contentions indicate possible material disputes, the parties should proceed with discovery and the arbitration issue will be appropriately resolved on motions for summary judgment or an evidentiary hearing (bench trial), depending on whether genuine factual disputes exist.

---

[1] Plaintiff did provide her own purported affidavit. The statement contains language that plaintiff was "duly sworn and under oath" when making the statement, but there is no indication of a notary or other appropriate authority before whom plaintiff made the purported sworn statement. See Davis v. Ruby Foods, Inc., 2002 WL 1285797 *1 (N.D. Ill. June 11, 2002); Houston v. Provident Life & Accident Insurance Co., 2000 WL 1898591 *2 n.2 (N.D. Ill. Dec. 21, 2000). The statement also does not meet the requirements for a declaration contained in 28 U.S.C. § 1746.

Questions regarding the existence of an arbitration agreement are generally for the court to decide. Sphere Drake Insurance Ltd. v. All American Insurance Co., 256 F.3d 587, 591 (7th Cir. 2001); Matterhorn, 763 F.2d at 868; Viets v. Andersen, 2003 WL 21525062 *7 (S.D. Ind. June 26, 2003); Lee v. Deloitte & Touche, LLP, 2002 WL 31433421 *2 (N.D. Ill. Oct. 31, 2002). This includes the question of whether one of the parties actually entered into the contract. Sphere Drake, 256 F.3d at 590-91; Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 854-56 (11th Cir. 1992); Carbajal v. Household Bank, FSB, 2003 WL 22159473 *6 n.6 (N.D. Ill. Sept. 18, 2003). Thus, the issue of whether plaintiff actually agreed to be added to the MBNA account is for the court to decide in the first instance. If plaintiff was not properly added to the account, plaintiff cannot be required to arbitrate her claim against MBNA.

A contention that an arbitration provision is not enforceable because unconscionable is generally for the court to decide in the first instance. See Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 682 (1996); Smith v. Steinkamp, 318 F.3d 775, 778 (7th Cir. 2003); Boomer v. AT & T Corp., 309 F.3d 404, 417 (7th Cir. 2002); We Care Hair Development, Inc. v. Engen, 180 F.3d 838, 842-43 (7th Cir. 1999). Compare Hawkins v. Aid Association for Lutherans, 338 F.3d 801, 807 (7th Cir. 2003) (contention that remedy provisions of arbitration agreement were unconscionable was an issue for the arbitrator, not one

that went to the enforceability of arbitration itself). The unconscionability issue raised by plaintiff is one for the court to decide in the first instance.

Plaintiff also contends that the Arbitration Section is unenforceable because the cost of arbitration places an undue burden on bringing her FCRA claim against MBNA. This is a possible basis for finding an arbitration provision to be unenforceable and is an issue that would be decided by the court. See Livingston, 339 F.3d at 557; Popovich v. McDonald's Corp., 189 F. Supp. 2d 772, 776 (N.D. Ill. 2002).

If the Arbitration Section is found to be enforceable, there is no contention by plaintiff that the FCRA claim against MBNA falls outside the scope of subject matter covered by the Arbitration Section.

The contentions presently before the court indicate that a factual dispute exists regarding whether plaintiff telephonically requested to be added as a cardholder, whether she received a copy of the credit card Agreement, whether she ever used a credit card for the account which was necessary to activate the Agreement, and whether she ever received the amendment adding the Arbitration Section. This precludes the possibility of presently holding that plaintiff is required to arbitrate her claim against MBNA. It still must be considered whether any of the other grounds of unenforceability raised by plaintiff can presently be resolved.

Plaintiff's contention regarding unconscionability does not state a sufficient basis for finding the Arbitration Section to be unconscionable. Plaintiff contends the Arbitration Section should be found unconscionable because she did not have the option of rejecting it; it was a "take it or leave it" proposition. It need not be decided if that would be a sufficient basis for finding unconscionability since the undisputed facts before the court do not show the amendment was a "take it or leave it" offer. But even if that type of offer had been made, case law supports that that would not, by itself, make the Arbitration Section unconscionable. See Boomer, 309 F.3d at 415 & n.5; Hill v. Gateway 2000, Inc., 105 F.3d 1147, 1148-49 (7th Cir.), cert. denied, 522 U.S. 808 (1997); Reyes v. Equifax Credit Information Services, 2003 WL 22922190 *3 (N.D. Ill. Dec. 10, 2003). Instead, the facts before the court are that, when the amendment was mailed out, cardholders had an opportunity to reject the addition of an Arbitration Section without also being required to give up their credit card. Therefore, the factual basis for plaintiff's unconscionability contention is lacking. Plaintiff does contend that she actually had no choice because she never received the amendment. However, if she never received the amendment,[2] the Arbitration Section is unenforceable because

---

[2]This assumes she never received the amendment because she was not a cardholder or it was not mailed out. If she was an actual cardholder who did not receive the amendment because she had moved elsewhere and failed to properly notify MBNA of her address change, the result might be different. See Reyes, 2003 WL 22922190 at *3.

she never entered into an agreement to arbitrate.  There is no
need or basis for a separate unconscionability contention.

In order to succeed on her contention that the
Arbitration Section is unenforceable because cost-prohibitive,
plaintiff bears the burden of proof and must, at the appropriate
point in the proceeding, provide individualized evidence of both
prohibitive costs and that she is financially incapable of
meeting those costs.  Livingston, 339 F.3d at 557.  Presently,
plaintiff makes insufficient factual contentions as to either
element.  Plaintiff provides absolutely no allegation as to her
personal ability to pay the expenses of an arbitration.
Moreover, the Arbitration Section provides that plaintiff may
require MBNA to advance the costs of arbitration.  At the
conclusion of the arbitration, the arbitrator may determine who
will bear the costs.  There is nothing in the Arbitration
Agreement, nor apparently NAF procedures, that prohibits
plaintiff, should she be successful on her claim, from recovering
costs and attorney fees as provided in the FCRA.  Plaintiff's
contention that the expenses of arbitration are more expensive
than court proceedings is questionable.  Plaintiff's contentions
ignore court costs other than the filing fee when comparing her
costs in court to the hearing and administrative costs of a NAF
arbitration.  Compare Reyes, 2003 WL 22922190 at *4-5.  More
importantly, plaintiff ignores the provision of the Arbitration
Section that she cannot be required to pay more in arbitration
costs than she would have incurred for court costs in a state

court proceeding. There is no reason to expect state court costs to be significantly different from federal court costs. Thus, there is no possibility that arbitration costs will exceed court costs. Plaintiff cannot possibly succeed in making a showing that arbitration costs would be so prohibitive as to make the Arbitration Section unenforceable.

A disputed issue exists regarding whether the Arbitration Section is enforceable as against plaintiff. It will not be resolved until after the parties have had an adequate opportunity for discovery. The issue of whether plaintiff was actually a cardholder for her ex-husband's account is also an issue central to plaintiff's FCRA claim. Most of the discovery that goes to the merits of plaintiff's FCRA claim against MBNA also goes to the issue of the enforceability of the Arbitration Section. There would be no point in bifurcating discovery in any way.[3] Compare Affymetrix, Inc., Inc. v. PE Corp. (N.Y.), 219 F. Supp. 2d 390, 398-99 (S.D.N.Y. 2002). At the conclusion of discovery, if appropriate, either side may move for summary judgment on the issue of a stay pending arbitration. Otherwise, if MBNA is still pressing for a stay pending arbitration at that point, procedures for hearing the arbitrability issue will be discussed with the parties at the first status hearing following the close of discovery. Pursuant to a prior order of the court,

---

[3] That issues going to the enforceability of the Arbitration Section also go to the merits of the FCRA claim does not preclude the court from resolving the issues that go to arbitrability. See, e.g., Sphere Drake, 256 F.3d at 592.

discovery is to be completed by March 24, 2004 and a status hearing is set for March 31, 2004.

MBNA also contends that the Complaint fails to adequately allege an FCRA claim. However, until the issue of arbitration is resolved (and only if it is resolved against granting a stay), the court declines to consider the merits of plaintiff's claim against MBNA since those issues would be for the arbitrator if this is an arbitrable claim. It is noted, however, that a plaintiff in federal court may plead in the alternative, including inconsistent alternative factual allegations. See Alper v. Altheimer & Gray, 257 F.3d 680, 688 (7th Cir. 2001); Convoy Servicing Co. v. Trailmobile Trailer, LLC, 234 F. Supp. 2d 826, 832 (N.D. Ill. 2002); Anderson v. Cornejo, 1999 WL 35307 *4 (N.D. Ill. Jan. 11, 1999). The motion to dismiss will be denied without prejudice.

IT IS THEREFORE ORDERED that defendant MBNA's motion to stay proceedings pending arbitration or, in the alternative, to dismiss the complaint [16-1,2] is denied without prejudice. Within two weeks, defendant MBNA shall answer the complaint.

ENTER:

/s/ William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: JANUARY 22, 2004